**Jane E. POWER, Iris Loftus, Alice Martin, Bonnie A. Smith, Dawn E. Sensiba, and Beverly K. McManaway, Plaintiffs,**

v.

**BARRY COUNTY, MICHIGAN; David O. Wood, Sheriff of Barry County; Local 156 of the Fraternal Order of Police and Local 214 of the International Brotherhood of Teamsters, Defendants.**

No. G80–97.

United States District Court, W. D. Michigan, S. D.

June 1, 1982.

Mohney, Goodrich & Titta, P.C., Bruce W. Neckers, Robert D. Vanderlaan, Grand Rapids, Mich., for plaintiffs.

Miller, Johnson, Snell & Cummiskey, Charles C. Hawk, Jon G. March, Grand Rapids, Mich., for defendants Barry County, Michigan and David O. Wood, Sheriff.

## OPINION

ENSLEN, District Judge.

The Plaintiffs are a group of female employees of the Barry County Sheriff's Department; between 1976 and December 1981[1], they acted as "matrons" for county prisoners while also carrying out duties as dispatchers. During that time, the county employed an all male staff of "correction officers" who supervised jail inmates. In February of 1980, the Plaintiffs filed this lawsuit naming Barry County, Michigan, and David O. Wood, Sheriff of Barry County as Defendants; later, they amended the Complaint, naming Local 156 of the Fraternal Order of Police, and Local 214 of the International Teamsters. Plaintiffs' charge that Defendants have engaged in discrimi-

---

1. A job classification change in the Barry County Sheriff's Department on January 1, 1981, provided for employment of non-plaintiff females as correction officers. A second change which occurred on January 1, 1982, and the Plaintiffs were transferred from their positions as matron/dispatchers to correction officers.

natory conduct prohibited by the 14th Amendment, Title VII, 42 U.S.C. § 2000e *et seq.*, and the Equal Pay Act, 29 U.S.C. § 201 *et seq.* The Defendants deny liability under any theory.

Barry County and David O. Wood (hereinafter "County Defendants") are before the Court on a Motion to Dismiss, requesting *inter alia* that paragraph 16(g) be excised from Plaintiffs' Third Amended Complaint. That paragraph provides:

> Defendants have devised and perpetuated a compensation scheme which underpays Plaintiffs in comparison with the correction officers' jobs, which Plaintiffs assert are of comparable and equal worth to Barry County and which require equal work.

According to the County Defendants, this paragraph fails to state a claim upon which relief can be granted because a "mere claim of unequal pay for comparable work does not state a valid claim under either Title VII or the Equal Pay Act". As set forth in Defendants' supplemental brief: "the issue presented by the present motion is whether a sex based wage discrimination claim under a 'pure' comparable work [sic] theory states a cause of action under Title VII".

Plaintiffs object, claiming that paragraph 16(g) does state a cause of action under federal law. Plaintiffs allege that although "matrons" and "correction officers" employed by Barry County performed equal work of comparable value, the "matrons" received a significantly lower level of compensation.

After thoroughly reviewing the briefs submitted by the parties and conducting independent research, I have reached the conclusion that comparable worth is not a viable legal theory under Title VII and thus cannot be utilized by Plaintiffs. I arrived at this conclusion based upon the following analysis.

## I. Federal Case Law

The comparable worth doctrine has, as the Supreme Court noted in *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), been the subject of much scholarly debate. Although there are many definitions of comparable worth, the quintessential element common to all is that discrimination exists when workers of one sex in one job category are paid less than workers of the other sex in another job category and both categories are performing work that is not the same in content, but is of the "comparable worth" to the employer in terms of value and necessity.

To better comprehend the doctrine in terms of sex discrimination, one ought not to start with the Supreme Court's decision in *Gunther, supra*, but should, instead, review the cases decided before *Gunther*.

### A. Pre-Gunther

Prior to the late 1970's, the majority of courts faced with the issue held that a cause of action under Title VII for wage discrimination had to satisfy the equal work standard of the Equal Pay Act. The courts typically based such a holding on an interpretation of the Bennett Amendment to the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(h).

However, the Courts slowly modified this position, opining that the strictures of the Equal Pay Act did not apply to Title VII actions. For example, in *International Union of Electrical, Radio and Machine Workers v. Westinghouse*, 631 F.2d 1094 (CA 3 1980), plaintiffs alleged that defendants had deliberately set lower wage rates for those job classifications which were predominantly filled by females than the wage rates for those job classifications which were predominantly filled by males. The United States Court of Appeals for the Third Circuit held that plaintiffs' allegations of willful and intentional discrimination in formulating job classifications on the basis of sex, stated a cognizable claim under Title VII.

In *Gerlach v. Michigan Bell Telephone Company*, 501 F.Supp. 1300 (ED Mich.1980), the Court ruled that female engineering clerks could maintain a claim under Title VII without meeting the equal work standard if they could show intentional discrimination but expressly declined to rule that a

claim based on comparable worth could, standing alone, serve as a cause of action for sex based discrimination. A claim of comparable worth *per se* is not cognizable under Title VII because "... such an allegation is, by necessity, based on subjective evaluations of comparability among jobs". 501 F.Supp. at 1321. When directly confronted with the comparable worth issue, that court was unwilling to find an independent cause of action based solely upon evidence of comparable worth.

In *Lemmons v. City of Denver*, 620 F.2d 228 (CA 10) *cert. denied* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980), nurses employed by the city brought suit seeking relief for sex discrimination under Title VII and the 14th Amendment. The plaintiffs essentially claimed that nurses were underpaid in city positions, and in the community, in comparison with other and different jobs which they asserted were of equal worth to the employer. The Tenth Circuit Court of Appeals found that the type of disparity for which plaintiffs requested relief was not sought to be adjusted by Title VII, and was not within the equal protection clause. Consequently, the court ruled that in the absence of some evidence of intentional discrimination, it could not provide plaintiffs' requested remedy.

Finally, several months before the *Gunther* opinion was released, *Taylor v. Charley Brothers, Inc.*, 25 F.E.P. 602 (WD Penn 1981), held that a grocery wholesaler violated Title VII by classifying jobs according to the sex of the person holding the position. The district court found that the particular facts evidenced defendant's intention to pay women less solely on the basis of sex, and not because of the work they performed was of less value. Although it might be argued that *Taylor* recognized the pure comparable worth theory, this Court subscribes to the view that the case turned upon the plaintiff's ability to demonstrate intentional discrimination.

Thus, even before the Supreme Court's pronouncements in *Gunther*, the majority of courts had abandoned the equal work requirement with respect to Title VII actions.

Nonetheless, those courts which had modified their earlier positions were still reluctant to embrace a *per se* theory of comparable worth. Such claims were permitted only where the aggrieved persons had sufficiently alleged willful and intentional discriminatory acts.

### B. Gunther

It was in this judicial milieu that the Supreme Court decided *County of Washington v. Gunther, supra*. Four women who were employed to guard female prisoners in a county jail sought relief under Title VII, alleging that they received unequal wages for work substantially equal to that performed by male guards and that the pay differential was attributable to intentional sex discrimination. Additionally, plaintiffs claimed that even if they failed to meet the equal work standard of the Equal Pay Act, they could nonetheless maintain a Title VII action because part of the pay differential between male and female guards was attributable to intentional sex discrimination. The United States District Court for the District of Oregon dismissed this claim, ruling as a matter of law that a gender based wage discrimination claim cannot be brought under Title VII unless it satisfies the equal work standard of the Equal Pay Act.

The United States Court of Appeals for the Ninth Circuit agreed that the guard and matron positions were not equal, but vacated the district court's dismissal of plaintiffs intentional discrimination claim, holding that persons alleging sex discrimination are "not precluded from suing under Title VII to protest other discriminatory compensation practices". *Gunther v. County of Washington*, 623 F.2d 1303, 1308 (CA 9 1979).

The Supreme Court affirmed the Court of Appeals ruling that persons bringing sex discrimination claims under Title VII of the Civil Rights Act of 1964 are not required to satisfy the equal work standard of the Equal Pay Act. The Bennett Amendment, the court opined, incorporates the Equal Pay Act's affirmative defenses, but does

not incorporate the entire equal/pay equal work formula. While the Equal Pay Act applies solely to jobs that require equal skill, effort and responsibility, Title VII does not. Thus, with the enactment of the Bennett Amendment both Title VII and the Equal Pay Act permitted wage differentiation between men and women performing the same job if the differential results from a seniority system, a merit system, a system that measures quantity or quality of production, or any other factors unrelated to sex.

The Supreme Court expressly stated that plaintiffs claim was not based on the doctrine of comparable worth; as Justice Brennan wrote:

> Respondents claim is *not* based on the controversial concept of 'comparable worth', under which plaintiffs might claim increased compensation on the basis of the comparison of the intrinsic worth or difficulty of their jobs with that of other jobs in the same organization or community. 452 U.S. 166, 101 S.Ct. 2246, 68 L.Ed.2d 757–758.

Rather, according to the Court, Plaintiffs were seeking to show by direct evidence that they were victims of intentional discrimination and that, as such, they should be permitted to proceed under that theory.

From *Gunther* it is abundantly clear that the Supreme Court has embraced the trend established by lower federal courts and sanctioned the practice of permitting Plaintiffs to prove that they are victims of intentional gender based discrimination. The opinion makes it equally clear that the Court has not sanctioned the comparable worth doctrine.

### C. Post-Gunther Cases

Since *Gunther* was decided in June of 1981, a number of lower courts have subsequently been called upon to decide claims involving wage compensation. Yet, none of those decisions have recognized the theory of comparable worth as stating an independent cause of action. However, several cases have adopted the intentional discrimination theory approved by the *Gunther* court. *Blowers v. Lawyers Cooperative Publishing Company*, 25 F.E.P. 1425 (WD NY 1981); *Wilkins v. University of Houston*, 654 F.2d 388 (CA 5 1981). Other cases have followed either the traditional Title VII analysis or invoked the Equal Pay Act. See *Boyd v. Madison County Mutual Insurance Company*, 653 F.2d 1173 (CA 7 1981); *Piva v. Xerox Corporation*, 654 F.2d 591 (CA 9 1981); *Walter v. KFGO Radio*, 518 F.Supp. 1309 (D ND 1981); *Briggs v. City of Madison*, 28 F.E.P. 739 (WD Wis 1982).

In summary, the reported decisions fail to sustain the existence of a comparable worth theory; instead, they either adopt the *Gunther* intentional discrimination theory or adhere to the more traditional Title VII analysis.

### II. Legislative History

Inasmuch as federal court decisions have failed to offer any real support for a comparable worth theory, I will consider both the Equal Pay Act and Title VII and their legislative histories, in an effort to ascertain whether either or both do, indeed, support such a theory.

### A. Equal Pay Act

As many courts and commentators have noted, the genesis of federal wage bills can be traced to a policy adopted by the National War Board during World War II. Under National War Board guidelines, equal pay for comparable quality and quantity of work was mandated; the Board was empowered to remedy situations where inequities existed between similar positions. After the war, this policy served as a model for many legislative proposals, but it was not until the 1960's that political leaders of this country became serious about passage of the Equal Pay Act.

In 1962, the Kennedy administration proposed a bill requiring equal pay for equal work, but it was not until 1963 that Congress held hearings on the proposed legislation. From a reading of the legislative history of the Equal Pay Act, it is evident that the controversy surrounding the bill focused primarily on whether the language

should read equal pay for equal work, or whether it should read equal pay for comparable work. That controversy was resolved in favor of the former construction. As Representative Godell, one of the sponsors of the bill, stated:

> I think it is important that we have clear legislative history at this point. Last year when the House changed the word 'comparable' to 'equal' the clear intention was to narrow the whole concept. We went from 'comparable' to 'equal' meaning that the jobs involved should be virtually identical, that is, they would be very much alike or closely related to each other.
>
> We do not expect the Labor Department people to go into an establishment and attempt to rate jobs that are not equal. We do not want to hear the Department say, 'Well, they amount to the same thing', and evaluate them so they come up to the same skill or point. We expect this to apply only to jobs that are substantially identical or equal. I think that the language in the bill last year which has been adopted this year, and has been further expanded by reference to equal skill, effort, and working conditions, is intended to make this point very clear. 109 Cong Rec 9197.

In its historical context, the Equal Pay Act must be viewed as a piece of legislation that addressed the issue of equal pay for equal work, and not "to be invoked to mandate equality of pay for jobs of different content". *Angelo v. Bacharach Instrument Company*, 555 F.2d 1164 (CA 3 1977).

## B. Title VII

The legislative history of Title VII's prohibition of sex discrimination is "notable primarily for its brevity". *General Electric v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976).

As originally proposed Title VII did not mention sex discrimination, and, therefore, sex discrimination in employment did not initially play an important role in the hearings concerning the bill. However, during the later stages of the debate, Congressman Smith of Virginia proposed an amendment adding sex as a prohibited category of employment discrimination. Legislative scholars maintain that Smith and his allies sought this addition because they believed that it would ultimately result in the bill's defeat. Notwithstanding this apparent attempt to sabotage the legislation, the strategy failed and the Smith Amendment was adopted by the House on the same afternoon it was introduced.

When Title VII reached the Senate, a review of the meaning of the prohibition on sex discrimination took place. The legislative history includes a brief memorandum inserted by Senator Clark in response to queries by Senator Dirksen as to the relationship of Title VII to the Equal Pay Act.

> Objection: The sex antidiscrimination provisions of the bill duplicate the coverage of the Equal Pay Act of 1963. But more than this, they extend far beyond the scope and coverage of the Equal Pay Act. They do not include the limitations in that act with respect to equal work on jobs requiring equal skills in the same establishments, and thus, cut across different jobs.
>
> Answer: The Equal Pay Act is a part of the wage hour law, with different coverage and with numerous exemptions unlike Title VII. Furthermore, under Title VII, jobs can no longer be classified as to sex, except where there is a rational basis for discrimination on the ground of bona fide occupational qualification. *The standards in the Equal Pay Act for determining discrimination as to wages, of course, are applicable to the comparable situation under Title VII.* (Emphasis added). 110 Cong Rec 7217.

Aside from this controversy, the other area which caused concern was the Bennett Amendment, which has previously been discussed. The Bennett Amendment in its entirety provides:

> It shall not be an unlawful employment practice under this title for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid to employees of such

employer if such differentiation is authorized by the provisions of [the Equal Pay Act]. 42 U.S.C. § 2000e–2(h). Although there had been a great deal of uncertainty as to the meaning of the Amendment, with the issuance of *Gunther* the Supreme Court has in large measure foreclosed further speculation concerning it.[2] The Supreme Court concluded from its reading of the legislative history, that the Bennett Amendment was a technical amendment; that a cause of action under Title VII does not come within the equal work formula of the Equal Pay Act, and that such an action will be precluded if a wage differential is based upon seniority, merit, or quantity or quality of production. Following this interpretation, the Court sanctioned a cause of action under Title VII which did not meet the "equal work for equal pay" standard, i.e. intentional discrimination.

A review of the legislative history of Title VII leads me to conclude that the Supreme Court's recognition of intentional discrimination may well signal the outer limit of the legal theories cognizable under Title VII. There is no indication in Title VII's legislative history that the boundaries of the Act can be expanded to encompass the theory of comparable worth. Nor is there convincing evidence that Congress intended to make such a theory available to those seeking redress for real or imaginary wage inequalities. Nothing in the legislative history indicates support for an independent claim of recovery where the outcome of the case is dependent upon a court's evaluation of the relative worth of two distinct jobs. Therefore, I endorse Judge Boyle's conclusion in *Gerlach v. Michigan Bell Telephone Company, supra,*:

> While the Court wholeheartedly concurs in the observation that the advancement of women and minorities will not be assured until employers pay all persons according to their value to the enterprise, it is my judgment that Congress has, thus far, seen fit to limit an employer's wage rate evaluations only by the preclusions against discrimination in wages and by the requirements of equal pay for objectively defined equal or substantially equal work. Thus, I cannot conclude at this point in time that Congress has authorized the courts to undertake an evaluation and determination of the relative worth of employees. 501 F.Supp. at 1321.

### III. *Plaintiffs' Legal Argument*

Finally, I have closely studied the information provided by the Plaintiffs and note that, without exception, the cases cited, both in their original brief and in their supplemental brief, fail to support their contention that the theory of comparable worth is cognizable under Title VII. Where the cases deviate from the equal pay formula, they merely endorse a theory of recovery premised upon intentional discrimination. Essentially, the decisions cited by Plaintiffs for the proposition that comparable worth constitutes an independent cause of action under Title VII are unconvincing and miss the point. Those cases actually reinforce the proposition that Plaintiffs do not have to come within the equal pay formula to state a cause of action. Stated another way, if Plaintiffs are able to demonstrate their wages are lower solely because they are women, then a claim under Title VII will exist. That is a quantum leap from the theory of comparable worth advanced by Plaintiffs, wherein the Court is required to evaluate the worth of different jobs and rank them according to their relative values. Similarly, the legislative history provided by Plaintiffs fails to buttress their intention that comparable worth is a cognizable and independent cause of action.

### IV. *Conclusion*

Plaintiffs have failed to support their contention that the theory of comparable worth must be recognized as an independent cause of action. This Court cannot, and will not, evaluate different jobs and

---

**2.** See Judge Boyle's Opinion in *Gerlach* where she reviews the Bennett Amendment and Title VII and honestly and exhaustively points out the contradictory aspects of their legislative histories.

determine their worth to an employer or to society and then, on that basis alone, determine whether Title VII or the Equal Pay Act has been violated. Aside from the inherent problems and other ramifications in making such a subjective evaluation of the intrinsic worth of different jobs, I am precluded, because of the limitations of Title VII and the Equal Pay Act, from attempting such an onerous task. Thus, paragraph 16(g) of Plaintiffs' Complaint, which purports to state a cause of action based on comparable worth, must be dismissed.[3] Accordingly, an Order granting the County Defendants' Motion to Dismiss and striking paragraph 16(g) of Plaintiffs' Third Amended Complaint shall enter this date.

---

[3] I certainly recognize the theory of intentional discrimination as described in Gunther. I also recognize, that certain courts have permitted evidence of comparable worth to be used as evidence of intentional discrimination. See, e.g. *Gerlach v. Michigan Bell Telephone Company, supra.*